## CAMP v. FILM ADVERTISING CORPORATION.

### No. 13177.

Court of Civil Appeals of Texas. Dallas.

Feb. 6, 1942.

Rehearing Denied March 13, 1942.

Bowyer, Gray, Thomas & Jaffe, of Dallas, and Joe S. Gambill, of Denton, for appellant.

McCombs & Andress, of Dallas, for appellee.

BOND, Chief Justice.

This is the third appeal in this case. In the first appeal, Camp v. Screen Broadcasts, Inc., 118 S.W.2d 398, the Waco Court of Civil Appeals reversed and remanded the case, on the question of venue. In the second appeal, Film Advertising Corporation v. Camp, 137 S.W.2d 1068, this Court arrived at a conclusion contrary to that announced by the Waco Court solely on the question of whether or not the facts related were available on defendant's plea

940

of privilege. The Waco Court held that the facts presented venue issue, while this Court held that the facts related went to the merit of the cause, hence reversed the judgment of the court below and made an order overruling defendant's plea of privilege. On motion by appellee Camp to the Supreme Court, for leave to file a petition for mandamus against this Court to certify the question of conflict, the Supreme Court refused the motion and, in doing so, expressly approved the holding of this Court. Camp v. Bond, Chief Justice, et al., 134 Tex. 678, 139 S.W.2d 77.

The facts related in the two former appeals are substantially the same as in this appeal: The suit was filed against Camp, who resided at Denton, Texas, on a written order, signed by the defendant and payable to Paschall-Texas Theatres, Inc.-Interstate Circuit, Inc., at Dallas, Texas. In the order, Interstate Circuit, Inc., agreed to furnish certain series of advertising films to be screened in a certain theatre in the town of Denton, changed at intervals, advertising the use of Brilliantex and the defendant's cleaning and dyeing business, for which Camp obligated himself to pay the Corporation $25 per month for a period of 52 weeks.

The record shows that the Corporation furnished the advertising films in accordance with the terms of the contract, depicting the use of Brilliantex, and the cleaning and dyeing business of the defendant, and that such advertising matter was run in the Denton Theatre, to defendant's account. On trial to the court, without a jury, judgment was rendered for plaintiff against the defendant for the sum of $205, with legal interest.

The primary question involved in this appeal is, whether the trial court had a right to disregard the testimony of the defendant Camp, solely on the ground that he was a party to the suit, hence an interested witness. Camp's testimony was uncontroverted, clear and unequivocal. He testified that Brilliantex, the commodity to be advertised in the films, was a copyrighted article; that M. D. Hendrix, of Oak Cliff, Dallas, Texas, owned the copyright, and had the sole right to approve the wording to be used in any such advertising; that he had a contract with Mr. Hendrix to submit to him for approval all advertisement of Brilliantex and that, when any changes were to be made in the advertisement, he reserved the exclusive right to approve the change before they were screened in the theatres. Mr. Camp further testified: "I wanted to advertise Brilliantex and I propositioned them (Ford and Day, agents, who procured and executed the order) to come to Dallas and get the advertising from Mr. Hendrix and then I would sign the order. They said if I signed that order, they would go and see Mr. Hendrix * * * I signed the instrument, upon condition that they go to Mr. Hendrix and get the advertising, because he was supposed to furnish the advertising for Brilliantex." He further testified that the approval of Mr. Hendrix, in the respect indicated, was not secured and as soon as he discovered that the films were being run in the theatre he protested, because the advertising had not been approved by Hendrix, and informed the plaintiff that he would not pay for the advertising. Mr. Hendrix corroborated Camp's testimony as to the reservation for advertising of Brilliantex, that the product was copyrighted, that Camp was not authorized to extend any advertising without his consent; and, further, that he did not approve, nor was he called upon to approve, the advertising matter used in connection with the films in question. Mr. Camp's testimony was further corroborated by Mr. Gresling and Mr. Roscoe: Each testified that they were employes of Mr. Camp and were present when Mr. Camp made the agreement in question with Ford and Day, agents for the Film Company. Mr. Gresling testified that, "When Ford and Day were in Camp's place of business talking about this advertising matter, he heard Mr. Camp say to them that he would sign the contract for the screen broadcast, if they would go by and get the advertising like Mr. Hendrix wrote out, and I remember them (Ford and Day) say they would do that, if he would sign the contract." Mr. Roscoe testified that he remembered the occasion of Ford and Day talking to Mr. Camp about some advertising matter and, in response to questions, said:

"Q. I'll get you to state what that discussion was. A. All the discussion that I heard was that they were to go by and get some advertising from Mister Hendrix.

"Q. That Ford and Day were to go by and get it? A. Yes.

"Q. What did Mister Camp say, if anything, about their going by and get any advertising approved from Mister Hendrix? A. What did Mr. Camp say?

"Q. Yes. A. He asked them if they would go.

"Q. And what did they say. A. They said they surely would."

In the first appeal of this case, Judge Alexander, of the Waco Court [118 S.W.2d 399], said: "Camp's testimony [as here] was clear and unequivocal and was not in anywise impeached or discredited. In fact, he was corroborated in part by Hendrix. Under these circumstances, the trial court was not authorized to wholly disregard his evidence and to enter a judgment contrary thereto." (Citing numerous authorities). In this appeal, the evidence is much stronger. Mr. Camp's testimony is not only corroborated in part by Mr. Hendrix, as in the former appeal, but is further corroborated by Mr. Gresling and by Mr. Roscoe. Furthermore, as said by Judge Alexander: "It was within the power of the plaintiffs to have contradicted Camp's testimony as to the condition under which the written agreement was signed and delivered by calling as witnesses their agents, Ford and Day, who secured the execution of the agreement and who were familiar with the facts, but these witnesses were not called to testify nor was their absence otherwise accounted for." So, in the instant appeal, Ford and Day were not called as witnesses to contradict Mr. Camp's testimony, and so far as this record discloses, no effort was made by appellee to secure their testimony, although the whereabouts of Mr. Day was well known to the president of the Film Company. Under these circumstances, it must be presumed that, if Mr. Day would have contradicted the testimony of Camp on the unconditional delivery of the contract in question, at least some effort would have been made to secure that evidence; and, since none was made, the presumption must be indulged that he would not have disputed Camp's testimony. Taylor & Co. v. Nehi Bottling Co., Tex.Civ.App., 30 S.W.2d 494. Therefore, it must be held that the trial court was not authorized to wholly disregard appellant's evidence and to enter a judgment contrary thereto. Camp v. Screen Broadcasts, Inc., Tex.Civ.App., 118 S.W.2d 398.

The contract in question having been conditionally delivered, signed with the understanding that it was not to become binding until Hendrix approved the wording of the advertisement, and such approval not having been secured, the contract never became binding. American Slicing Mach. Co. v. Vincent, Tex.Civ.App., 279 S.W. 317; Unique Illustrating Co. v. Withers, Tex.Civ.App., 33 S.W.2d 1074. Evidently the trial court disregarded the testimony of Camp and his supporting witnesses, and rendered judgment contrary thereto, without conflicting testimony. The judgment of the court below is reversed and here rendered for appellant.

Reversed and rendered.